UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCISCO VELIZ,

Plaintiff,

-against-

COLLINS BUILDING SERVICES, INC., DAVID MARTINEZ, JIMMY RAMIREZ, FATOS PRELVUKAJ, and TONY TONUZI,

Defendants.

10 Civ. 06615 (RJH)

**MEMORANDUM OPINION AND ORDER**

Richard J. Holwell, District Judge:

Defendants Collins Building Services, Inc. ("CBS"), David Martinez, Jimmy Ramirez, and Fatos Prelvukaj[1] (together "the Collins Defendants") move to dismiss *pro se* Plaintiff Francisco Veliz's claim of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). Defendant Tony Tonuzi also moves to dismiss Plaintiff's claims. For the reasons that follow, both motions are granted.

**BACKGROUND**

The following facts are taken from (1) plaintiff Veliz's form complaint; (2) Veliz's complaint with the Equal Employment Opportunity Commission ("EEOC"); (3) the Collective Bargaining Agreement ("CBA") between Veliz's union, Service Employees International Union Local 32BJ (the "Union"), and The Realty Advisory Board on Labor Relations, Inc., of which

[1] The complaint incorrectly identifies Fatos Prelvukaj as "Factos Prelivkaj." The caption has been changed accordingly.

CBS is a member; and (4) Veliz's opposition papers, which consist of affidavits of three of his former co-workers.[2]

Veliz, a man of Peruvian origin, was employed by CBS for sixteen years. (Compl. at 3; EEOC Compl. (attached as Ex. D to Aff. of Samantha Abeysekera, Esq. in Supp. of Def.'s Mot. to Dismiss ("Abeysekera Aff.")).) During that time, he was a member of Union 32BJ and, for at least a portion of that time, his immediate supervisor was Fatos Prelvukaj, a man of Albanian origin. (EEOC Compl.; *see* Compl. at 3.) Veliz does not specify in what capacity the other Collins Defendants served CBS.

Veliz alleges that he was continually harassed and discriminated against during his tenure at CBS. Veliz alleges that Prelvukaj prohibited him from speaking Spanish on the job and that Prelvukaj warned him that any complaints to the Union would result in retaliation. (EEOC Compl.) Veliz also appears to allege, through the affidavit of his former co-worker Sphen Koleci, that the Union's staff was paid to ignore its members' grievances. (Koleci Aff. ¶ 5 (attached to Veliz's Aff. in Opp'n to Mot.).) Veliz further alleges that, on May 5, 2008 and January 5, 2009, CBS increased the workloads of Hispanic employees, including Veliz, while leaving the workloads of Albanian employees unchanged. (EEOC Compl.) Veliz also claims that Hispanic employees were subject to closer supervision than Albanian employees and that

---

[2] A court may consider these documents on a motion to dismiss without converting the motion to one for summary judgment. Veliz's EEOC complaint may be considered because, "'with respect to administrative filings (such as the NYSDHR and the EEOC) and decisions, the Court may consider such documents [on a motion to dismiss] because they are public documents filed in state administrative proceedings, as well as because they are integral to plaintiff's claims.'" *Musaji v. Banco de Brasil*, No. 10 Civ. 8541, 2011 WL 2507712, at *4 n.4 (S.D.N.Y. June 21, 2011) (quoting *Morris v. David Lerner Assocs*., 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010)). The CBA may be considered because Veliz's complaint "relies heavily upon its terms and effect," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), in the sense that his complaint is based entirely on his employment relationship with CBS, of which the CBA is an integral part. *See Tyler v. City of N.Y.*, No. 05 CV 3620, 2006 WL 1329753, at *1 n.2 (E.D.N.Y. May 16, 2006). Veliz's opposition papers also may be considered. *See McCray v. City Univ. of N.Y.*, No. 10 Civ. 3152, 2011 WL 1143045, at *2 n.3 (S.D.N.Y. Jan. 3, 2011) ("[The] mandate to read a *pro se* plaintiff's pleadings liberally makes it appropriate for the Court to consider the factual assertions made in opposition to a motion to dismiss a *pro se* complaint as supplementing the allegations contained in the complaint." (citations omitted)).

Albanian employees received "better floor jobs" than Veliz and other Hispanic employees. (*Id*.) Veliz also contends that he was suspended from work on October 2, 2008 for participating in an unspecified "protected activity." (*Id*.) Finally, the affidavits of Veliz's former co-workers, though difficult to understand, appear to allege that Defendants Ramirez and Martinez hated Veliz; that Defendant Tonuzi was an employee of CBS and had the authority to distribute overtime, which he gave to his "favorites;" and that the Defendants generally discriminated against Veliz on the basis of his ethnicity. (*See* Koleci Aff. ¶¶ 4, 7; Aff. of Jose Perez ¶ 4; Aff. of Gladys Gros ¶ 2 (all affidavits are attached to Veliz's Aff. in Opp'n to Mot.).) CBS provided Veliz a notice of termination on November 18, 2008. (EEOC Compl.) Veliz alleges that his termination was discriminatory.

The CBA between Veliz's Union and the Realty Advisory Board of which CBS is a member requires union employees to submit discrimination claims to binding arbitration pursuant to the grievance and arbitration provisions of the CBA. (*See* 2008 Contractors Agreement between Service Employees International Union Local 32BJ and The Realty Advisory Board on Labor Relations, Inc. ("CBA") ¶ 30, at 103-04 (attached as Ex. B to Abeysekera Aff.).) Specifically, the CBA contains a "No Discrimination" clause that provides:

> There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, sexual orientation, union membership or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, 42 U.S.C. § 1981, the Age Discrimination in Employment Act . . . or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Article V and VI) as the sole and exclusive remedy for violations.

(*Id*.)

Veliz does not allege that he attempted to resolve his claims through the grievance and arbitration procedure. Instead, he filed a complaint with the EEOC on May 26, 2009, alleging

national origin discrimination and retaliation under Title VII. (*See* EEOC Compl.) On July 30, 2010, the EEOC issued Veliz a right-to-sue letter, and on September 7, 2010, Veliz filed this action, alleging various claims under both Title VII and the ADEA. (*See* EEOC Compl.; Compl. at 1.) The Collins Defendants have moved to dismiss Veliz's complaint against them under Rule 12(b)(6) based primarily on Veliz's failure to arbitrate. Defendant Tonuzi has moved to dismiss the complaint against him on the ground that it fails to state a claim against him.

**LEGAL STANDARD**

"Courts ruling on motions to dismiss must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Dickerson v. Mut. of Am.*, 703 F. Supp. 2d 283, 290 (S.D.N.Y. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"A document filed *pro se* is 'to be liberally construed,' and a '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97,

106 (1976)). Courts must "read[] such submissions 'to raise the strongest arguments they suggest.'" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, "[w]hile held to a less stringent standard, the *pro se* plaintiff is not relieved of pleading requirements, and failure to plead the basic elements of a cause of action may result in dismissal." *Andino v. Fischer*, 698 F. Supp. 2d 362, 376 (S.D.N.Y. 2010). Indeed, "*pro se* status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure." *Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 (S.D.N.Y. 2007).

**DISCUSSION**

At the outset, the Court notes that there is a "lack of clarity in the case law of this Circuit (and others) as to what procedural mechanism must be employed by courts to dismiss actions in which the parties are bound to resolve (or attempt resolution of) their claims in accordance with a contractual grievance procedure, such as an agreement to arbitrate." *Tyler v. City of N.Y.*, No. 05 CV 3620, 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006) (citing cases that variously have dismissed actions under Rules 12(b)(1), 12(b)(6), and the Federal Arbitration Act ("FAA")); *see Sleepy's LLC v. Escalate, Inc.*, No. 10 Civ. 1626, 2010 WL 2505678, at *1 n.15 (S.D.N.Y. June 18, 2010) (dismissing under Rule 12(b)(1) and noting the "lack of clarity" on the issue); *Tand v. Solomon Schechter Day Sch. of Nassau County*, 324 F. Supp. 2d 379, 381, 384 (E.D.N.Y. 2004) (dismissing under Rule 12(b)(6)); *Alphonse Hotel Corp. v. N.Y. Hotel & Motel Trades Council, AFL-CIO*, No. 03 Civ. 1992, 2004 WL 414836, at *3 (S.D.N.Y. Mar. 5, 2004) (Chin, J.) (finding jurisdiction proper but dismissing under Rule 12(c) based on arbitration agreement); *see also Precision Press, Inc. v. MLP U.S.A., Inc.*, 620 F. Supp. 2d 981, 984 n.1 (N.D. Iowa 2009) (referring to the "enigmatic question of whether motions to dismiss based on an arbitration

clause should properly be brought as motions under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6)"). The Court, however, need not resolve this issue here. The parties have brought their motions under Rule 12(b)(6), no party objects to the application of Rule 12(b)(6), and, in any event, the result here would be the same under nearly any of the available mechanisms.[3]

**A. Defendant CBS**

Defendant CBS argues that Veliz's complaint should be dismissed because his claims are subject to mandatory arbitration under the CBA.

The FAA provides that all arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009), the Supreme Court examined a CBA that is identical in all material respects to the CBA at issue here and concluded that its arbitration provision was enforceable with respect to ADEA claims. *Id.* at 1461. The Court analyzed the plain language of the National Labor Relations Act, 29 U.S.C. § 151 (the "NLRA"), and the ADEA and concluded that "the CBA's arbitration provision must be honored unless the ADEA itself removes this particular class of grievances from the NLRA's broad sweep." *Pyett*, 129 S. Ct. at 1465. Because the ADEA did not do so, the Court held that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law." *Id.* at 1474. The Court also noted that, like the ADEA, Title VII contains no language precluding arbitration. *Id.* at 1470 n.9. Accordingly, courts in this Circuit have held that *Pyett*'s rationale applies equally to Title VII claims, and that Title VII claims therefore are subject to mandatory arbitration, provided the

---

[3] For example, the complaint here would be dismissed under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, because, under the FAA, agreements to arbitrate are generally enforceable, and district courts, in their discretion, may dismiss, rather than stay, an action when all claims within it are subject to mandatory arbitration. *See Johnson v. Tishman Speyer Props., L.P.*, No. 09 Civ.1959, 2009 WL 3364038, at *4 (S.D.N.Y. Oct. 16, 2009). As discussed below, the arbitration agreement here is enforceable and all claims in this action fall within its scope.

arbitration agreement "clearly and unmistakably" requires as much. *See Morris v. Temco Serv. Indus. Inc.*, No. 09 Civ. 6194, 2010 WL 3291810, at *4 (S.D.N.Y. Aug. 12, 2010); *Johnson v. Tishman Speyer Props., L.P.*, No. 09 Civ.1959, 2009 WL 3364038, at *3 (S.D.N.Y. Oct. 16, 2009). The CBA, nonetheless, will be unenforceable if it operates as a waiver of an employee's substantive rights under the anti-discrimination statutes. *Pyett*, 129 S. Ct. at 1474; *see Mitsubishi Motors Corp. v. Soler Chysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985); *Kravar v. Triangle Servs. Inc.*, No. 06 Civ. 07858, 2009 WL 1392595, at *3 (May 19, 2009) (finding the CBA unenforceable where the Union, pursuant to its authority in the CBA, prevented the plaintiff from arbitrating her disability discrimination claims).

The CBA to which Veliz is subject clearly and unmistakably requires him to submit his claims to the CBA's grievance and arbitration procedures. Indeed, the CBA explicitly provides that claims under Title VII and the ADEA "shall be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violations." (CBA ¶ 30, at 104.) Veliz has not alleged that he made any attempt to resolve his claims through those procedures. Instead, Veliz claims that Prelvukaj warned him that any complaints to the Union would result in retaliation. This allegation, however, is not sufficient to plead that the CBA operated to prevent Veliz from asserting his statutory rights because Veliz does not allege what, if any, authority Prelvukaj had to authorize or deny arbitration of a Union employee's grievances. *Cf. Borrero v. Ruppert Housing Co.*, No. 08 Civ. 5869, 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009) (stating that the CBA will be unenforceable where the plaintiff "is prevented by the *Union* from arbitrating his claims" (emphasis added)); *Kravar*, 2009 WL 1392595, at *3. Moreover, Veliz's contention, through the affidavit of his former co-worker Sphen Koleci, that the Union paid its staff to ignore members' grievances likewise is insufficient. Veliz has not alleged that this

practice prevented *him* from arbitrating his claims because Veliz has not made any contention that he sought arbitration in the first place. *See Vaca v. Sipes*, 386 U.S. 171, 184 (1967) ("[T]he employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement."); *Tand*, 324 F. Supp. 2d at 384. Accordingly, Veliz has not alleged sufficient facts to establish a plausible claim that the CBA operated to prevent him from asserting his statutory rights in arbitration. Thus, because Veliz has not utilized the grievance and arbitration procedures as required by the CBA, his claims against CBS are dismissed. Veliz's claims against CBS are dismissed without prejudice because if the CBA operates to preclude Veliz's attempt, if any, to resolve his statutory claims through the procedures set forth therein, the CBA will be unenforceable and Veliz will have the right to re-file his claim in federal court. *See Borrero*, 2009 WL 1748060, at *2 (citing *Kravar*, 2009 WL 1392595, at *3).

Should Veliz wish to pursue his claims further, he must utilize the grievance and arbitration procedures provided in the CBA. This means Veliz first must take up his grievances "with a representative of the Employer [CBS] and a representative of the Union." (CBA Art. 5, ¶ 2(a), at 14.) If the grievance is not resolved, Veliz then may attempt resolution at a "Step II Grievance Meeting," at which counsel for both the Union and the Employer may be present. (*Id.* ¶ 2(b), at 14.) Finally, if the Step II meeting does not yield a resolution, the grievance may be submitted to arbitration. (*Id.* ¶ 2(c), at 14.) Veliz must comply with these procedures even though he is no longer employed by CBS. *See Johnson*, 2009 WL 3364038, at *3; *Borrero*, 2009 WL 1748060, at *1-3.

**B. The Individual Defendants**

The individual Defendants argue that the claims against them should be dismissed because individuals cannot be held liable under either Title VII or the ADEA. Title VII imposes liability on employers who discriminate. "Title VII defines 'employer' in relevant part as 'a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person.'" *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) (quoting 42 U.S.C. § 2000e(b)). The Second Circuit has interpreted this definition to mean that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (citing *Tomka*, 66 F.3d at 1314). Similarly, courts in this Circuit have held that individuals cannot be liable for ADEA violations. *Doner-Hendrick v. N.Y. Inst. of Tech.*, No. 11 Civ. 121, 2011 WL 2652460, at *5 (S.D.N.Y. July 6, 2011); *Parker v. Metro. Transp. Auth.*, 97 F. Supp. 2d 437, 452 (S.D.N.Y. 2000). Accordingly, the claims against individual Defendants Martinez, Ramirez, Prelvukaj, and Tonuzi[4] must be dismissed.[5]

---

[4] Defendant Tonuzi contests the assertions contained in the affidavits of Veliz's co-workers that Tonuzi was an employee of CBS. Tonuzi asserts that he was not an employee of CBS, but of CB Richard Ellis, the agent of the owner of the building in which Veliz worked and the company that contracted with CBS for cleaning services in that building. Although Tonuzi's factual submissions are not considered on a motion to dismiss, it is plain that Veliz has failed to state a claim against Tonuzi because, as set forth above, individuals cannot be held liable for violations of either Title VII or the ADEA.

[5] In dismissing the Title VII and ADEA claims made against the individual defendants, the Court does not address whether Veliz may have claims against them under the New York State Human Rights Law or the New York City Human Rights Law, both of which provide for individual liability, *see Briggs v. Mercedes-Benz Manhattan, Inc.*, No. 04 Civ. 7094, 2006 WL 2789927, at *10 (S.D.N.Y. Sept. 27, 2006). It appears that Veliz chose not to bring such claims because he did not check the corresponding boxes that are prominently displayed on the first page of his standardized form complaint and because his complaint otherwise does not suggest that he intended to rely on state or city law as a basis for liability. Although some courts have interpreted a *pro se* plaintiff's form complaint to allege state law discrimination claims even in the absence of a clear reference to a specific state law, the form complaints in those cases did not offer the putative plaintiff the option to check a box alleging state and city law claims and also contained a jurisdictional statement providing that jurisdiction may be proper on "any related claims under New York law." *See, e.g.*, *Lukasiewicz-Kruk v. Greenpoint YMCA*, 07 Civ. 2096, 2009 WL 3614826, at *13 (E.D.N.Y. Oct. 30, 2009); *Grant v. Pathmark Stores, Inc.*, 06 Civ. 5755, 2009 WL 2263795, at *1 n.1 (S.D.N.Y. July 29, 2009). Neither is true of Veliz's form complaint here. In any event, even if the Court were to interpret Veliz's complaint as asserting claims under the state and city human rights laws, it would decline to exercise supplemental jurisdiction over those claims because all of Veliz's federal claims have been dismissed. *See* 28 U.S.C.



§ 1367(c)(3). Further, the Court does not address whether the individual defendants would be entitled to force Veliz to arbitrate his claims against them pursuant to the CBA.

## CONCLUSION

For the reasons set forth above, the Collins Defendants' motion to dismiss [17] is GRANTED. Defendant Tonuzi's motion to dismiss [12] is also GRANTED.

SO ORDERED.

Dated: New York, New York
September 26, 2011

Richard J. Holwell
United States District Judge